IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| United Financial Casualty Co. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **C.A. No.:** 3:26-cv-728-SAL |
| | ) | |
| Ekaterina Bashaeva | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, United Financial Casualty Company, by and through its undersigned attorneys, complaining of the Defendant herein, seeks a declaratory judgment from this Honorable Court as set forth below.

## PARTIES AND JURISDICTION

1. This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Federal Rule of Civil Procedure, Rule 57, for the purposes of determining a question of actual controversy between the parties as hereinafter more fully appears.

2. United Financial Casualty Company ("Progressive") is a corporation organized under the laws of the State of Ohio with its principal place of business in the State of Ohio.

3. Defendant Ekaterina Bashaeva ("Bashaeva") is a citizen and resident of the State of Florida.

1

5773862.2

4.     Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332, because the Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interests and costs. As further evidence of the amount of controversy being met, in the Underlying Lawsuit, Bashaeva alleged she sustained "serious injuries, pain and suffering, mental anguish, lost wages, [and] medical expenses" as a result of the Accident and has separately issued a demand to Progressive in the amount of $1,000,000 for the alleged Underinsured Motorist limits under the at-issue Progressive policy, Policy No. 00909196-0 issued in the name of Diamond Express Pro LLC with effective dates of September 5, 2023 to September 5, 2024 and affording Part I—Liability to Others limits of $1,000,000 and Underinsured Motorist Bodily Injury limits of $1,000,000 (the "Progressive Policy").

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred within this District insofar as the Accident giving rise to this action occurred in and the related Underlying Lawsuit was filed in Richland County, South Carolina, which is located within this District.

6.     Venue is proper in this Division pursuant to Local Civ. Rule 3.01(A)(1) (D.S.C.), because a substantial part of the events or omissions giving rise to the claim occurred within this Division insofar as the Accident giving rise to this action occurred in and the related Underlying Lawsuit was filed in Richland County, South Carolina, which is located within this Division.

## FACTUAL BACKGROUND

### The Accident

7.     This matter involves a motor vehicle accident that occurred on August 29, 2025 on Interstate 26 in Richland County, South Carolina and involving a 2024 Ram Pickup Truck (VIN 3C63RRGL4RG112534) (the "Subject Truck"), which was towing an unidentified enclosed trailer

loaded with a 1979 Ford Pickup Truck, and multiple other vehicles, including a 2014 Nissan being operated by LaRhonda Gibson with Ketron Gibson and Ketron Gibson Jr. as passengers and a 1999 International Truck being operated by Sandy Mason (the "Accident").

8.     At the time of the Accident, the Subject Truck was being operated by Vladislav Belov ("Belov") with Bashaeva as a passenger.

9.     At the time of the Accident, Belov was operating the Subject Truck in the course and scope of his employment as a truck driver with Diamond Express Pro LLC ("Diamond Express") and/or under the motor carrier authority of Diamond Express.

10.    At the time of the Accident, a 2023 Ford (VIN 1FT8W3DT2PED26984) (the "2023 Ford") was leased by Damask, Inc. to Diamond Express for Diamond Express to use in connection with its motor carrier operations.

## The Underlying Lawsuit & the Gibson Lawsuit

11.    On May 21, 2025, Bashaeva filed a lawsuit in the Court of Common Pleas in Richland County captioned *Ekaterina Bashaeva v. Vladislav Belov, Diamond Express Pro, LLC, Negroni Trucking, LLC, and Sandy Mason* bearing case number 2025-CP-40-03612 (the "Underlying Lawsuit"). A true and accurate copy of the operative Complaint filed in connection with the Underlying Lawsuit is attached hereto as **Exhibit A**.

12.    The Underlying Lawsuit was served upon Progressive as the alleged Underinsured Motorist insurance carrier. A true and accurate copy of the proof of service upon Progressive as the alleged Underinsured Motorist insurance carrier is attached hereto as **Exhibit B**.

13.    Progressive timely filed a Notice of Appearance and Conditional Answer as Possible UIM Carrier to the Underlying Lawsuit. A true and accurate copy of Progressive's pleading is attached hereto as **Exhibit C**.

14. In addition to the Underlying Lawsuit, another lawsuit was filed by the Gibsons, the occupants of the 2014 Nissan involved in the Accident (the "Gibson Lawsuit").

The Progressive Policy

15. At the time of the Accident, the Progressive Policy was active and in effect. A true and accurate copy of the Progressive Policy with premiums redacted is attached hereto and incorporated herein by reference as **Exhibit D.**

16. The Progressive Policy states, in pertinent part:

## COMMERCIAL AUTO POLICY

If **you** pay **your** premium when due, **we** will provide the insurance described in this policy.

## GENERAL DEFINITIONS

The words and phrases below, whether in the singular, plural or possessive, have the following special meanings when appearing in boldface type in this policy, and in endorsements issued in connection with this policy, unless specifically modified.

17. "**Temporary substitute auto**" means any **auto you** do not own while used with the permission of its owner as a temporary substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction. However, **temporary substitute auto** does not include any **auto** available for the regular or frequent use of **you**, a **relative**, or **your employees** unless that **auto** is insured under a separate policy of insurance that provides at least the minimum required limits of financial responsibility under the applicable state and federal laws.

5773862.2

20. "**We**", "**us**" and "**our**" mean the company providing this insurance as shown on the **declarations page**.

21. "**You**", "**your**" and "**yours**" refer to the named insured shown on the **declarations page**.

### PART I—LIABILITY TO OTHERS

#### INSURING AGREEMENT—LIABILITY TO OTHERS

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense** for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. However, **we** will only pay for the **covered pollution cost or expense** if the same **accident** also caused **bodily injury** or **property damage** to which this insurance applies.

B. When used in Part I—Liability To Others, **insured auto** also includes:

3. Any **temporary substitute auto**; and

    17.    The Progressive Policy contains an Underinsured Motorist ("UIM") Endorsement, which states, in pertinent part:

5

5773862.2

Form 2852 WA (02/19)

# UNDERINSURED MOTORIST COVERAGE ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy, and related endorsements, is modified as follows:

## INSURING AGREEMENT—UNDERINSURED MOTORIST BODILY INJURY COVERAGE

Subject to the Limits of Liability, if **you** pay the premium for Underinsured Motorist Bodily Injury Coverage, **we** will pay for damages, other than punitive or exemplary damages, which an **insured** is legally entitled to recover from the **owner** or operator of an **underinsured auto** because of **bodily injury**:
1. sustained by an **insured**;
2. caused by an **accident**; and
3. arising out of the ownership, maintenance, or use of an **underinsured auto**.

## ADDITIONAL DEFINITIONS

When used in this endorsement, whether in the singular, plural, or possessive:

An "**underinsured auto**" does not include any motorized auto or equipment:
a. **owned** by, furnished to, or available for the regular use of **you** or, if the named insured is a natural person, a **relative**. However, this exclusion to the definition of **underinsured auto** does not apply to an **insured auto** with respect to **bodily injury** to **you** or, if the named insured is a natural person, a **relative**;

6

**LIMITS OF LIABILITY**

Regardless of the number of premiums paid, or the number of **insured autos** or **trailers** shown on the **declarations page**, or the number of policies issued by **us**, or the number of vehicles or **insureds** involved in an **accident**, or the number of claims or lawsuits arising out of an **accident**, **we** will pay no more than the Limit of Liability shown for Underinsured Motorist Coverage on the **declarations page**.

However, for **bodily injury** to any **insured** other than **you** or, if the named insured is a natural person, a **relative**, **we** will not pay more than the Limits of Liability shown on the **declarations page** for coverage under this endorsement, reduced by all sums paid under Part I—Liability To Others for **bodily injury** to that **insured**.

**OTHER INSURANCE**

When the named insured is a natural person, if there is other applicable similar insurance, **we** will pay only **our** share of the **loss**. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide shall be excess over any other collectible insurance, except for **bodily injury** to **you** or a **relative** when **occupying** an **insured auto**.

When the named insured is a corporation, partnership, organization or any other entity that is not a natural person, if there is other applicable similar insurance, **we** will pay only **our** share of the **loss**. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for the occupant of an **insured auto** shall be excess over any other collectible insurance.

If this policy and any other policy providing similar insurance apply to the same **accident**, the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any one policy.

**We** will not pay for any damages that would duplicate any payment made for damages under other insurance.

18.    Progressive conducted a coverage investigation in connection with the Accident and the claims alleged in the Underlying Lawsuit and the Gibson Lawsuit, ultimately determining that for purposes of Part I—Liability to Others coverage under the Progressive Policy, the Subject

7

Truck qualified as a "temporary substitute auto", substituting in place of the 2023 Ford, which was specifically described on the Declarations Page to the Progressive Policy at the time of the Accident.

<u>Demand, UIM Denial, and Partial Settlement under Part I—Liability to Others Coverage</u>

19. In connection with the Underlying Lawsuit, demand was made upon Progressive by Bashaeva, care of her counsel, for the full available limits of liability under Part I—Liability to Others coverage and UIM coverage under the Progressive Policy.

20. Progressive ultimately extended the full available $1,000,000 Part I—Liability to Others limit of liability to resolve claims at issue in the Underlying Lawsuit and the Gibson Lawsuit, the result of which was that Bashaeva received $249,500.00 payable under Part I—Liability to Others coverage of the Progressive Policy, but Progressive denied the demand with respect to alleged UIM coverage owed to Bashaeva under the Progressive Policy.

21. Thereafter, on November 17, 2025, Bashaeva dismissed ***without prejudice*** the Underlying Lawsuit, subject to her right to re-file the lawsuit to allege a claim against Progressive as the putative Underinsured Motorist insurance carrier. *See* **Exhibit E**.

22. On December 12, 2025, Bashaeva, proceeding *pro se*, issued a renewed demand for UIM benefits under the Progressive Policy. *See* **Exhibit F**.

23. On January 12, 2026, counsel for Bashaeva formally withdrew its representation of Bashaeva with respect to her claim for UIM benefits under the Progressive Policy. *See* **Exhibit G**.

24. On January 14, 2026, Progressive reiterated its denial of Bashaeva's entitlement to UIM benefits under the Progressive Policy in relation to the Accident. *See* **Exhibit H**.

25. On February 5, 2026, Bashaeva, still proceeding *pro se*, issued to Progressive an Appeal of Denial and Notice of Intent to Sue, reflecting her disagreement with Progressive's coverage position with respect to her alleged entitlement to UIM benefits under the Progressive Policy, contending Progressive has taken an inconsistent position in recognizing that the Subject Truck qualifies as a "temporary substitute auto" for Part I—Liability to Others coverage, but not an "underinsured auto" for UIM coverage, and reiterating her demand for "all UIM benefits owed."

26. All proper and present antagonistic interests or all parties having any interest in the outcome and adjudication of the present controversy are before the Court by proper process.

27. Progressive is in doubt with respect to its rights under the Progressive Policy and, by this Complaint, seeks a declaration of its rights and obligations as to Bashaeva under the Progressive Policy with respect to the Accident and Bashaeva's claim for UIM benefits under the Progressive Policy.

28. Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure, Rule 57, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to give such relief as it deems necessary under the facts and circumstances presently existing.

**FOR A FIRST CAUSE OF ACTION**
**(Declaratory Judgment as to the Progressive Policy)**

29. Progressive restates the foregoing allegations of the Complaint not inconsistent herewith and incorporates the same herein by reference.

30. Progressive previously acknowledged that the Subject Truck qualifies as a "temporary substitute auto" for Part I—Liability to Others coverage under the Progressive Policy and therefore Bashaeva was entitled to and was paid benefits under Part 1 – Liability to Others Coverage of the Progressive Policy.

31. Since, the Progressive Policy defines "you" as the named insured on the declarations page of the Progressive Policy, Diamond Express, the UIM Endorsement to the Progressive Policy provides that an "underinsured auto", as that term is defined by the Progressive Policy, does not include any auto "furnished to" Diamond Express.

32. Contrary to Bashaeva's contention, Progressive has not taken an inconsistent position with respect to benefits owed under the Progressive Policy pursuant Part I—Liability to Others coverage and pursuant to the UIM endorsement. More specifically, "temporary substitute auto" and "underinsured auto" have different definitions under the Progressive Policy. The Progressive Policy expressly provides that an "underinsured auto" does not include any motorized auto or equipment: (1) owned by, (2) furnished to, or (3) available for the regular use of Diamond Express. Those are three separate exceptions to an auto qualifying as an "underinsured auto." So, while, by virtue of the Subject Truck being treated as a temporary substitute auto for purposes of Part I—Liability to Others coverage under the Progressive Policy it could not be available for the regular or frequent use of Diamond Express, it was indisputably "furnished to" Diamond Express as it was being operated under Diamond Express' motor carrier authority at the time of the Accident.

33. The Subject Truck does not meet the definition of an "underinsured auto" under the Progressive Policy because the Subject Truck was "furnished to" Diamond Express and/or Belov as a temporary substitute to the 2023 Ford under lease to Diamond Express and was being operated in the course and scope of Belov's 49 C.F.R. part 390.5 employment with Diamond Express and/or under the motor carrier authority of Diamond Express at the time of the Accident.

34. The Progressive Policy affords no UIM coverage for the Accident or Bashaeva's claim for UIM benefits made against the Progressive Policy because the Subject Truck does not

qualify as an "underinsured auto" under the Progressive Policy insofar as it was furnished to Diamond Express and Belov.

35. Bashaeva is not entitled to UIM benefits under the Progressive Policy in relation to the Accident because she is not legally entitled to recover from the owner or operator of an "underinsured auto" as defined in the Progressive Policy

36. For each of the foregoing reasons, Progressive is entitled to an Order holding:

   a. The Progressive Policy affords no UIM coverage for the Accident or the UIM claims made by Bashaeva against the Progressive Policy in relation to the Accident; and

   b. Bashaeva is not entitled to UIM benefits under the Progressive Policy in relation to the Accident.

WHEREFORE, United Financial Casualty Company prays that the Court enter judgment in its favor as set forth hereinabove and for such other and further relief as is just and proper.

Respectfully submitted this 20th day of February 2026.

>  *s/Robert "Rocky" C. Rogers*
>  Robert "Rocky" C. Rogers (Fed Bar #11655)
>  Christopher R. Wray (Fed Bar No. #13878)
>  Moseley Marcinak Law Group LLP
>  4324 Wade Hampton Blvd., Suite B
>  Taylors, SC 29687
>  PO Box 26148
>  Greenville, South Carolina 29616
>  (864) 248-6029 (864) 248-6035 (Fax)
>  Rocky.Rogers@momarlaw.com
>  Chris.Wray@momarlaw.com
>  *Attorneys for Plaintiff,*
>  *United Financial Casualty Company*